

JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4687 | **DATE** | 3/29/2001 |
| **CASE TITLE** | RITA HOWARD-AHMAD vs. CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, BRYN MAWR SCHOOL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court (1)grants in part and denies in part plaintiff and defendant's Motion to Strike [33-1, 33-2, 33-3, 39-1, 39-2]; (2)grants defendant's motion for summary judgment as to Ahmad's Title VII claims of sexual harassment and discrimination (Count I) and retaliation (Count II)[30-1], and (3) denies defendant's motion for judgment on the pleadings as to Ahmad's Intentional Infliction of Emotional Distress Claim (Count III) [29-1]. Pursuant to 28 U.S.C. Section 1367(3), the Court, having dismissed all claims over which it has original jurisdiction, in its discretion declines to exercise supplemental jurisdiction as to Ahmad's state law claims, and dismisses Count III without prejudice. The Court hereby terminates this case. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|---|
| | No notices required. | | | | | | |
| | Notices mailed by judge's staff. | | | | MAR 30 2001 | | |
| | Notified counsel by telephone. | | | | date docketed | | 53 |
| ✓ | Docketing to mail notices. | | | | docketing deputy initials | | |
| ✓ | Mail AO 450 form. | | | | | | |
| | Copy to judge/magistrate judge. | | | | | | |
| TBK | courtroom deputy's initials | | COPY FOR DOCKETING 01 MAR 29 PM 5: 24 | | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RITA HOWARD-AHMAD,     )
    )
    Plaintiff,     )
    )
        )    **Judge Ronald A. Guzman**
    v.     )
    )    **99 C 4687**
CHICAGO SCHOOL REFORM     )
BOARD OF TRUSTEES,     )
BRYN MAWR SCHOOL,     )
    )
    )
    Defendant.     )

**DOCKETED**
**MAR 3 0 2001**

## MEMORANDUM OPINION AND ORDER

Plaintiff Rita Howard-Ahmad ("Ahmad") filed this suit against the Chicago Board of Education ("Board") alleging (1) sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"); (2) intentional discrimination because of her sex under Title VII; (3) retaliatory discrimination under Title VII; and (4) Intentional Infliction of Emotional Distress. Count I of Plaintiff's Second Amended Complaint claims Title VII sexual discrimination and harassment, Count II claims Title VII retaliation, and Count III claims Intentional Infliction of Emotional Distress. Presently before the Court is defendant's motion for summary judgment as to Counts I and II of Ahmad's Second Amended Complaint, plaintiff and defendant's motions to strike, and defendant's motion for judgment on the pleadings for Count III. For the reasons stated herein, defendant's motion for summary judgment as to Counts I and II is granted, plaintiff and defendant's motions to strike are granted in part and denied in part, and defendant's motion for judgment on the pleadings is denied as to Count III. The Court

declines to exercise supplemental jurisdiction over plaintiff's state law claim, and Count III is dismissed without prejudice. This case is hereby terminated.

## FACTS[1]

From 1992 to 1999, Ahmad had been employed as a teacher at Bryn Mawr elementary school. (Def's LR 56.1(a)(3) ¶¶ 10, 53.) On February 26, 1999 Ahmad filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 58.)

It is undisputed that the numerous disciplinary actions against Ahmad began as early as October 14, 1998. For example, as of October 14, 1998 Ahmad had not submitted lesson plans or student compositions for the first seven weeks of the school year. Assistant Principal Judith Harris ("Harris") issued Ahmad a written reprimand which stated that Ahmad had violated Article 1-2 of the Chicago Public School's Employee Discipline Code ("Discipline Code") by failing to provide lesson plans for seven weeks, student compositions for seven weeks, and for failing to provide a time distribution sheet. (*Id.* ¶¶ 19, 20, 21.)

On December 15, 1998, Harris observed Ahmad's classroom and noted weaknesses in Ahmad's ability to establish positive learning expectation standards, apply contemporary principals of learning theory and teaching methodology, exhibit or apply knowledge of the curriculum's content, discipline the students, manage the classroom instruction, and provide lesson plans. (*Id.* ¶ 25.) On December 16, 1998, Harris attempted to meet with Ahmad to

---

[1] The following facts are either undisputed or deemed admitted because plaintiff's response did not refute defendant's statement of fact and/or was unsupported by a citation to the record as required by LR 56.1(b)(3)(A), which this Court strictly enforces. Plaintiff did not file a statement of additional facts pursuant to LR 56.1(b)(3)(B).

discuss Harris's classroom observation pursuant to the Teacher Evaluation Plan and the collective bargaining agreement between the Chicago Teachers Union and the Chicago Board of Education ("Board"). (*Id.* ¶ 26.) During their meeting, Ahmad became angry, accused Harris of misappropriating school funds and refused to sign the Classroom Visitation Form, which would acknowledge that Ahmad had received the form. (*Id.* ¶ 26.)

On February 1, 1998, Ahmad was suspended without pay because of her behavior during the October 16, 1998 meeting with Harris, for directing profane and threatening language at another teacher and for failing to submit lesson plans and progress reports. (*Id.* ¶ 29.)

As of January 21, 1999, Ahmad had been absent for eleven days and tardy for four days. (*Id.* ¶ 27.) Ahmad was informed in a letter that if her absences and/or tardiness continued, Ahmad would be subject to disciplinary action. (*Id.*) On February 4, 1999, Lewis issued Ahmad a written reprimand for failing to inform the school of absences or tardiness in a timely manner. (*Id.* ¶¶ 7, 30.)

On February 5, 1999, Lewis issued another written reprimand for Ahmad's inappropriate conduct with Harris and the school clerk and again on February 8, 1999 for discussing with her sixth grade students the confrontations Ahmad had with other teachers and administrators. (*Id.* ¶¶ 31, 35.) Soon after, Lewis issued a letter notifying Ahmad that she was being charged with violating the Discipline Code because of her failure to inform the school of absences or tardiness in a timely manner, her irregular or excessive absences or tardiness, and her inappropriate behavior in the classroom or on school grounds. (*Id.* ¶ 35.)

Ahmad was scheduled to begin a three-day suspension on February 10, 1999. (*Id.* ¶ 36.) However, Ahmad arrived at Bryn Mawr on February 10, 1999 and was escorted from the school

building by school security officers. (*Id.* ¶ 36.) Ahmad was again suspended on February 18, 1999 in a previously scheduled Pre-Disciplinary Hearing. (*Id.* ¶ 39.) As a result of this hearing, Ahmad was suspended for five days for failing to inform the school of absences or tardies in a timely manner, having irregular or excessive absences or tardies, and behaving inappropriately in the classroom or on school grounds. (*Id.*)

On February 19, 1999, Lewis wrote a letter to the Region 5 Education Officer for the Board in which Lewis recounted events involving Ahmad during the 1998-1999 school year. (*Id.* ¶ 40.) In this letter, Lewis expressed his concern for the safety of the children, the staff and himself because of Ahmad's erratic behavior. (*Id.*) Additionally, Lewis inquired if Ahmad could be removed from the school premises. (*Id.*)

Lewis contacted Michelle Quigley ("Quigley"), Medical Administrator for the Board on February 24, 1999. (*Id.* ¶ 41.) The two discussed whether Ahmad should undergo a fitness-for-duty examination and Quigley advised Lewis to continue observing Ahmad's behavior. (*Id.*)

The following day, Ahmad filed a charge of sex discrimination of with the EEOC. (*Id.* ¶ 58.) The following disciplinary actions all occurred after Ahmad had filed a charge of sex discrimination with the EEOC:

On May 4, 1999 Harris sent a facsimile to Quigley requesting that Ahmad undergo a fitness-for-duty examination. (*Id.* ¶ 49.) After Quigley determined the examination was appropriate, two officers of the Board's Bureau of Safety and Security attempted to provide Ahmad with notice of the examination. (*Id.* ¶ 50.) However Ahmad would not sign the notice and did not report to the fitness-for-duty examination. (*Id.*)

On March 5, 1999, Lewis suspended Ahmad for another five days for leaving her classroom without permission, negligent supervision of the students, and unauthorized use of school property or services. (*Id.* ¶ 44.)

On or about January 25, 1999 Ahmad met with Thomas Owens ("Owens") of the Board's Bureau of Labor relations. (*Id.* ¶ 64.) It is undisputed that in this meeting Ahmad did not inform Owens that she believed she was being discriminated against on the basis of her sex or that she was sexually harassed. (*Id.*)

The Board has distributed to its employees a detailed sexual harassment policy. (*Id.* ¶ 66.) This policy directs employees to file the complaint with a person other than his or her immediate supervisor. (*Id.*) The Board's Sexual Harassment Officer would then investigate that complaint and if the complaint is substantiated the offending employee is subject to disciplinary action. (*Id.*)

## DISCUSSION

### I. Plaintiff's Motion to Strike

First, plaintiff moves to strike defendant's affidavit of Deborah Duskey and the attached Exhibit 24. Federal Rule of Civil Procedure ("Rule") 56(e) requires affidavits to "set forth such facts as would be admissible in evidence . . . ." To be admissible in evidence, the affidavit must be "accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public . . . ." Fed. R. Evid. 902(8). The affidavit of Deborah Duskey is unsigned and is not notarized. Thus, the affidavit is not admissible as evidence under Rule 56(e) and defendant's Motion to Strike the affidavit is granted.

Exhibit 24 is not admissible in evidence because it does not satisfy the business records exception to the hearsay rule. Fed. R. Evid. 803(6). Exhibit 24 is a report made by Deborah Duskey and Crystal Ryals detailing the events occurring on February 17, 1998 when plaintiff entered room 109 and made a telephone call. For Exhibit 24 to be admissible under the business records exception, the Court must take into account the information in Duskey's affidavit. However, since the affidavit of Deborah Duskey is excluded, Exhibit 24 must also be excluded. Therefore, plaintiff's Motion to Strike Exhibit 24 is granted.

Local Rule 56.1(a)(3) requires defendant's statement of undisputed facts to include specific references to the affidavits, parts of the record, or other supporting materials. Paragraph 38 of defendant's statement of undisputed facts refers only to the affidavit of Deborah Duskey and Exhibit 24. (Def.'s LR 56.1(a)(3) ¶ 38.) Thus, paragraph 38 of defendant's statement of undisputed facts is also stricken.

Second, plaintiff moves to strike defendant's Exhibit 38. Paragraph 66 of defendant's Statement of Material Facts refers to defendant's sexual harassment policy, Exhibit 38. (Def.'s LR 56.1(a)(3) ¶ 66.) Plaintiff claims that Exhibit 38 is not attached to defendant's Statement of Material Facts and should be stricken. This policy is attached to defendant's Statement of Material Facts after Exhibit 37 but was not tabulated. Thus, defendant's Exhibit 38 is attached to defendant's Statement of Material Facts and plaintiff's Motion to Strike defendant's Exhibit 38 is denied.

Thus, plaintiff's Motion to Strike is granted with respect to the affidavit of Deborah Duskey and Exhibit 24, but is denied with respect to Exhibit 38.

## II. Defendant's Motion to Strike

First, defendant moves to strike plaintiff's Local Rule 56.1 Response entirely based on plaintiff's failure to file a statement of additional facts and to conform to Local Rule 56.1. The Court acknowledges that certain responses do not comply with Local Rule 56.1 and the Court will disregard these responses accordingly. However, plaintiff's response will not be disregarded entirely because certain responses do conform with Local Rule 56.1. *See Wright v. Bogs Mgmt., Inc.*, No. 98 C 2788, 2000 U.S. Dist. LEXIS 17837, at *3 (N.D. Ill. Dec. 1, 2000) (declining to strike plaintiff's entire LR 56.1 Statement when plaintiff has attempted to comply with LR 56.1).

Although plaintiff has not filed a statement of additional facts, the Court finds that defendant is not prejudiced by this failure. Defendant argues that by failing to file a statement of additional facts, plaintiff instead introduces additional facts through her affidavit, to which defendant has no opportunity to reply. Even if plaintiff had filed a statement of additional facts, plaintiff must point to parts of the record, including her affidavit, to respond to defendant's statement of material facts, just as Ahmad has done in this case. *See* L R 56.1(b)(3)(A). Thus, the Court only looks at parts of the affidavit cited in support of plaintiff's Response to the Statement of Material Facts. The Court does not take as undisputed plaintiff's entire affidavit or any other additional facts set forth by plaintiff. Defendant's Motion to Strike plaintiff's response in its entirety based on plaintiff's failure to file a statement of additional facts and to conform to Local Rule 56.1 is denied.

Alternatively, defendant has moved to strike specific portions of plaintiff's Local Rule 56.1 Response that fail to comply with Local Rule 56.1. That rule requires in part that a party opposing a summary judgment motion must serve and file:

(A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

(B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

LR 56.1(b)(3). The Seventh Circuit has "repeatedly upheld the strict enforcement of these rules." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (listing cases).

In plaintiff's response to paragraphs 6, 13, 26, 28, 32, 43, 45, 48, 49, 62 and 66 of defendant's statement of undisputed facts, plaintiff fails to reference any affidavit, the record, or any other material to support her denial. The Seventh Circuit does not require district courts to "scour the record looking for factual disputes." *See Waldridge*, 24 F.3d at 922. Thus, because she provides no support for her denials, those paragraphs are deemed admitted. Similarly, plaintiff's responses to paragraphs 7, 8, 9, 10, 27, 30, 31, 33, 40, 41, 44, 45, 48, 49 and 59 state that plaintiff does not have any knowledge of the statement or that a particular statement is undisputed. These paragraphs are therefore deemed admitted.

Defendant moves to strike paragraph 38 because plaintiff's response fails to address the specific facts set forth in defendant's statement of material facts. As stated above, the Court has stricken paragraph 38 from defendant's statement of undisputed facts. Thus, plaintiff's response to paragraph 38 is moot.

Defendant also moves to strike paragraphs 19 and 50 of plaintiff's response because although plaintiff did reference parts of the record to support her denial, the referenced sections of

the record do not support the denial of the entire paragraph. In paragraph 19, plaintiff's reference to the record supports the denial of the statement by defendant that Ahmad had not turned in her time sheet. (Pl.'s LR 56.1(b)(3)(A) ¶ 19.) The cited portion of the record does not, however, dispute defendant's statement that as of October 14, 1998 Ahmad had not turned in lesson plans or student compositions to Harris. (Def.'s LR 56.1(a)(3) ¶ 19.) Thus, the undisputed factual statement in paragraph 19 that Ahmad had not turned in lesson plans or student compositions to Ms. Harris is deemed admitted. As to the remainder of paragraph 19, defendant's motion to strike is denied.

Similarly, in paragraph 50, plaintiff's reference to the record denies that Ahmad left the school but instead claims that Ahmad was forced out of the school. (Pl.'s LR 56.1(b)(3)(A) ¶ 50.) This statement does not dispute the entire paragraph 50 which also states that plaintiff was served with a letter directing her to undergo a fitness-for-duty examination, refused to sign the letter, and did not report for the examination. (Def.'s LR 56.1(a)(3) ¶ 50.) Therefore the undisputed factual statements in paragraph 50 are deemed admitted. In paragraph 50 plaintiff also responded that the male officer who served the letter was Officer Watkins not Officer Wright. (Pl.'s LR 56.1(b)(3)(A) ¶ 50.) However, because plaintiff does not cite to the record to support this denial, defendant's statement that the male officer was Officer Wright is deemed admitted.

Defendant also moves to strike paragraphs 15, 52, 56, 57, 60, 61, 63 and 65, arguing that the responses are based on assertions made in plaintiff's affidavit which directly contradict her deposition testimony. The Court grants defendant's Motion to Strike paragraphs 61 and 63, but finds the remaining responses do not contradict plaintiff's deposition testimony.[2]

---

[2] For example, plaintiff's affidavit states "I never received a letter from the board of education regarding reassignment." (Pl.'s Aff. ¶ 32.) This statement does not contradict plaintiff's testimony where plaintiff was asked

The Court finds plaintiff's response to paragraph 61 does not contradict plaintiff's deposition testimony. However plaintiff cites only the Second Amended Complaint to support her response to paragraph 61. A "plaintiff can no longer rest on the pleadings" in response to a motion for summary judgment. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (*citing* Fed. R. Civ. P. 56). Therefore, because the plaintiff only points to the pleadings in support of her denial, paragraph 61 is deemed admitted.

In plaintiff's response to paragraph 63, Ahmad states that she told Dr. Maloney that the reason for her harassment from Robert Lewis was because she was a woman. (Pl.'s LR 56.1(b)(3)(A) ¶ 63.) However, in her deposition plaintiff was asked "did you tell [Dr. Maloney] that you were being harassed because of your sex?" (Pl.'s Dep. p. 118.) Plaintiff responded "[n]o, but I told him that I was afraid I was going to be hurt physically." (Pl.'s Dep. p. 118.) Thus, paragraph 40 of Ahmad's affidavit directly contradicts page 118 of plaintiff's deposition testimony.

Plaintiff cannot create a genuine issue of material fact by simply submitting an affidavit which contains conclusory statements that contradict admissions in prior depositions. *Diliberti v. U.S.*, 817 F.2d 1259, 1263 (7th Cir. 1987). The Seventh Circuit has been "highly critical of efforts to patch up a party's deposition with their own affidavit." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995). Therefore, when the deposition and affidavit conflict, the affidavit is disregarded unless the party can demonstrate that the deposition was mistaken. *Id.*, 51 F.3d at 68. Thus,

---

"when were you assigned to [the Office of] Schools and Regions?" (Pl.'s Dep. p. 6.) Whereupon plaintiff replied, "I was not assigned . . . ." (Pl.'s Dep. p. 6.) Furthermore, in paragraph 15, defendant points to plaintiff's testimony at pages 26 through 38 of the deposition transcript. However, because the judge's copy did not include these pages and the original is missing from the official file, the Court cannot determine that those statements contradict plaintiff's affidavit.

plaintiff's affidavit will be disregarded as a response to paragraph 63 because plaintiff has not demonstrated that the contradictory deposition was mistaken.

Lastly, defendant has moved to strike paragraphs 9, 10, 12, 15, 16, 18, 30, 34, 35, 36, 37, 40, 41, 42, 45, 49 and 51 of Ahmad's affidavit on the grounds that the affidavit contains statements that are conclusory, lack foundation, lack a basis of knowledge, are hearsay, and contradict plaintiff's deposition testimony. The Court grants defendant's Motion to Strike paragraphs 9, 10, 12, 30, 36, 37, 40, 41, 42, 45 and 51 of the affidavit in part, but finds the remaining paragraphs do not contradict plaintiff's deposition testimony[3] and that plaintiff has a basis of personal knowledge for her statements.[4]

Under Rule 56(e), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Paragraphs 9, 10, 12, 30, 37, 41, and 51 of plaintiff's affidavit contain inadmissible evidence regarding facts not within the personal knowledge of plaintiff. These paragraphs contain conclusory statements which address the defendant's motive for suspending and retaliating against plaintiff, the legality of her suspension, and the knowledge and intent of plaintiff's superiors.

---

[3] For example, in paragraph 16 of plaintiffs affidavit Ahmad states that "Mr. Yancy, a sixth grade teacher, was constantly absent in the 1998-1999 school year" and "Mr. Yancy was treated more favorably than myself regarding these absences." (Pl.'s Aff. ¶ 16.) In contrast, at page 110 of plaintiff's deposition plaintiff was asked "[w]hat other examples do you have of male employees not being reprimanded or suspended for minor employment infractions?" (Pl.'s Dep. p. 110.) Plaintiff answered, "I don't know." (Pl.'s Dep. p. 110) The plaintiff's statements are not contradictory, as plaintiff could have recalled more examples at a later date.

[4] The plaintiff has sworn to have personal knowledge of her statements in paragraph 1 of plaintiff's affidavit. (Pl.'s Aff. ¶ 1.) Because the Court must view the facts on summary judgment in the light most favorable to the plaintiff, the Court must assume that plaintiff does have personal knowledge as to the facts asserted in her affidavit.

The following phrases and sentences are therefore stricken: (1) "I was suspended without pay because" (Pl.'s Aff. ¶ 9); (2) "I was retaliated against for my speech" (*id.* ¶ 10); (3) "The second suspension I received was not legal" (*id.* ¶ 12); (4) "the disparate treatment I was receiving" (*id.* ¶ 30) (two instances); (5) "This was disparate treatment which similarly situated males did not endure at Bryn Mawr" (*id.* ¶ 37); (6) "It was obvious to . . . Katherine Harris that the physical attacks were because I was a woman" (*id.* ¶ 41); and (7) "I was retaliated against for speaking out about the deficiencies at Bryn Mawr in my January 25, 1999 meeting with Thomas Owens and Doris Williams of Region 5 that same day" (*id.* ¶ 51).

As stated above in the Court's discussion of defendant's motion to strike paragraph 63 of plaintiff's response, the Court strikes paragraph 40 of plaintiff's affidavit because it contradicts plaintiff's former testimony given in her deposition. (*Compare* Pl.'s Dep. p. 188, *with* Pl.'s Aff. ¶ 40.)

In addition, paragraphs 36, 37 and 42 of Ahmad's affidavit contain inadmissible hearsay and defendant's motion to strike is granted with respect to the inadmissible sentences. Under Fed. R. Evid. 801(c), "'Hearsay' is a statement, other than one made by the declarant . . . offered in evidence to prove the truth of the matter asserted." Because the following statements were made by plaintiff, who was not the declarant, to prove the truth of what they assert, the statements are hearsay. Further, plaintiff has not asserted and the Court does not find, that any of the exceptions to the hearsay rule apply. The following sentences are therefore stricken: (1) "A Local School Council member, Mr. Muhammad, said I had been sexually harassed in the fall of 1998" (Pl.'s Aff. ¶ 36); and (2) "I was told by Lydia DeJesus Casaliano, an investigator for the Equal Employment Opportunity

Commission (EEOC), on March 1, 1999, that the physical and verbal abuse I incurred by Robert E. Lewis was discrimination based on sex" (*id.* ¶ 42).

Thus, to the extent that the Court strikes the aforementioned statements from plaintiff's response and affidavit, defendant's Motion to Strike is granted in part.


## III.  Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure ("Rule") 56(e) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter or law." To determine whether a genuine issue of material fact exists, the Court does not weigh the evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999).

The nonmoving party may not rest on her pleadings however, instead she must demonstrate through specific factual allegations that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Unless a reasonable jury could find for the nonmoving party, summary judgment must be granted. *Anderson*, 477 U.S. at 249.


## A.  Sexual Harassment

In order to survive summary judgment on a Title VII hostile work environment claim, plaintiff must establish that defendant's allegedly hostile conduct was so severe or pervasive it created an abusive working environment. *Perry v. Harris Chernin, Inc.* 126 F.3d 1010, 1013 (7th

Cir. 1997). Title VII does not prohibit all verbal or physical harassment however, only "discrimination because of . . . sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting 42 U.S.C. § 2000e-2(a)(1)). Although this conduct does not need to be expressly sexual, it must be of a sexual character. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999).

In support of her sexual harassment claim Ahmad states that her male principal and security personnel physically assaulted her. (Pl's Aff. ¶¶ 38, 45.) The alleged assault included grabbing and twisting Ahmad's wrist and shoving a piece of paper in her eye. (*Id.*) These events in and of themselves do not implicate any negative attitudes toward females because they are not sexual in nature. *See Hardin*, 167 F.3d at 345 (finding brief touching, approaches from behind in an electric cart, cutting off in parking lot, and door slammed in the face are not sexual in nature nor sufficiently severe to give rise to a hostile environment); *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998) (no hostile environment when coworker briefly touches, pokes, and directs ambiguous comments at plaintiff). Therefore, plaintiff has failed to establish that defendant's actions were because she is female, and thus she has not established a *prima facie* case of sexual harassment.

Moreover, assuming arguendo that plaintiff had shown harassment based on sex, defendant may present an affirmative defense if the harassment did not take the form of a "tangible employment action." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). To satisfy the affirmative defense the employer must prove that it took reasonable steps to "prevent and correct promptly any sexually harassing behavior" and that plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* The Seventh Circuit has found that even if the plaintiff did not read the defendant's sexual

harassment policy, defendant as a matter of law exercised reasonable care to prevent sexual harassment, when it is undisputed that plaintiff received the policy. *Shaw v. Autozone, Inc.*, 180 F.3d 806, 809 (7th Cir. 1999). The Court has deemed admitted that a detailed sexual harassment policy has been promulgated and distributed to employees of Bryn Mawr School. (Def.'s LR 56.1(a)(3) ¶ 66.) Plaintiff submits no evidence that she did not receive the policy distributed to all employees. Thus defendant initially exercised reasonable care to prevent sexual harassment in the workplace as a matter of law.

Moreover, plaintiff has presented no evidence to show that she took advantage of defendant's sexual harassment policy. Under defendant's policy, an employee is to file a complaint with a person other than her immediate supervisor, and this complaint is then forwarded to the Board's Sexual Harassment Officer for investigation. (Def.'s LR 56.1(a)(3) ¶ 66.) Plaintiff claims she informed the Board of her harassment claim when she spoke with the EEOC on February 26, 1999 and Dr. Morrissy a psychologist who conducted a fit-for-duty examination on the plaintiff May 11, 1999. (Pl.'s Aff. ¶ 30.) However plaintiff's complaint to the EEOC or Dr. Morrissy was not the procedure outlined in defendant's sexual harassment policy. (*See* Def.'s LR 56.1(a)(3) ¶ 66.) Thus, plaintiff unreasonably failed to take advantage of the corrective opportunities provided by her employer.

Therefore, because plaintiff has not shown a prima facie case of sexual harassment, defendant's motion for summary judgment as to plaintiff's sexual harassment claim is granted.

**B. Retaliation**

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff establishes a *prima facie* case of retaliation under Title VII by showing that (1) "she engaged in statutorily protected expression;" (2) "she suffered an adverse action by her employer;" and (3) "there is a causal link between her protected expression and the adverse action." *Sweeney v. West*, 149 F.3d 550, 555 (7th Cir. 1998).

If Ahmad satisfies this test with evidentiary-quality materials, the burden shifts to defendant to demonstrate a legitimate business reason for the action. *Speedy v. Rexnord Corp.*, No. 00-2885, 2001 U.S. App. LEXIS 3966, at *9 (7th Cir. Mar. 16, 2001). If the defendant can show a legitimate business reason, plaintiff must offer evidence that defendant's business reason is pretextual. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993).

Defendant does not dispute that plaintiff engaged in statutorily protected expression by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 26, 1999. (Def.'s LR 56.1(a)(3) ¶ 58.) However, defendant claims that plaintiff's conversation with an employee of the Bureau of Labor Relations on January 25, 1999 is not statutorily protected. Protected speech under Title VII forbids retaliation not only when a charge of discrimination is made but also when a defendant prevents a charge of discrimination from being made. *See McDonnell v. Cisneros*, 84 F.3d 256, 258-59 (7th Cir. 1996). Plaintiff has not offered any evidence tending to show that defendant could have believed that Ahmad would file a charge of discrimination after speaking with the employee of the Bureau of Labor Relations. Moreover, it

is undisputed that plaintiff did not even mention any sexual discrimination or harassment in her conversation with the employee of the Bureau of Labor Relations. (Def.'s LR 56.1(a)(3) ¶ 64.) Therefore defendant could not have been attempting to prevent a charge of discrimination when it had no reason to believe a charge would be made.

Defendant does not dispute that plaintiff has suffered adverse employment actions when Ahmad was repeatedly reprimanded, suspended, and ordered to attend disciplinary proceedings. (*Id.* ¶¶ 22, 27, 29, 30, 34, 35, 39.) Therefore, the first two elements of retaliation are met.

However, plaintiff has not shown a causal link between Ahmad's protected expression and her adverse employment actions. To determine if there is a causal link, "[t]he obvious place to start is the temporal sequence between the two; oftentimes it is unnecessary to look any further." *Sweeney*, 149 F.3d at 557. Ahmad attempts to base her retaliation claim on an alleged physical assault on February 17, 1999 a mandatory psychological examination[5], and a March 2, 1999 suspension. (Pl.'s LR 56.1(b)(3)(A) ¶¶ 38, 43, 51.) The assault occurred prior to Ahmad's charge of discrimination with the EEOC on February 26, 1999 and could therefore not have been retaliatory. (Def.'s LR 56.1(a)(3) ¶¶ 58, 64.)

Although the March 2, 1999 suspension and psychological examination took place after Ahmad's protected speech, the actions are still not causally linked to Ahmad's protected expression. Conduct by a defendant that is merely a continuation of the adverse employment actions that gave rise to a plaintiff's harassment complaints does not show a casual link. *McDonnell v. Cisneros*, 84

---

[5] The date the mandatory psychological examination took place is disputed. However, it is undisputed that Lewis had discussed a mandatory psychological examination for Ahmad on February 24, 1999. (Pl.'s LR 56.1(b)(3)(A) ¶ 51.) Thus, viewing the facts in the light most favorable to plaintiff, the Court will assume that the examination occurred after February 26, 1999.

F.3d 256, 259 (7th Cir. 1996) (finding ostracism, disdain, and ridicule did not escalate when the behavior occurred before and after plaintiff had filed a charge of harassment). Instead plaintiff must show that the harassment against her escalated after she engaged in statutorily protected expression. *McDonnell*, 84 F.3d at 259. It is undisputed that Ahmad had been suspended on February 1, 1998 and February 18, 1999. (Def.'s LR 56.1(a)(3) ¶¶ 29, 39.) Further, prior to her EEOC charge, Ahmad had been reprimanded and disciplined on numerous occasions. (Def.'s LR 56.1(a)(3) ¶¶ 21, 27, 31, 35.) It is also undisputed that Lewis had discussed a mandatory psychological examination for Ahmad and was advised to continue observing Ahmad's behavior. (Pl.'s LR 56.1(b)(3)(A) ¶ 51.) Therefore, defendant's conduct after Ahmad filed the EEOC charge was merely a continuation of the actions that occurred before Ahmad filed the charge of discrimination with the EEOC. Thus, plaintiff has not shown that defendant's adverse employment actions escalated and defendant's motion for summary judgment on Count II of plaintiff's Second Amended Complaint is granted.

Furthermore, defendant has shown legitimate non-discriminatory reasons for defendant's adverse employment actions. As an affirmative defense to a retaliation claim, a defendant may avoid liability by showing by a preponderance of the evidence that defendant would have made the same decision even plaintiff had not engaged in protected conduct. *Speedy v. Rexnord Corp.*, No. 00-2885, 2001 U.S. App. LEXIS 3966, at *9 (7th Cir. Mar. 16, 2001). To determine whether defendant would have made the same decision the court should consider any criticism of the employee that occurred before the retaliatory motive becomes plausible. *See id.* at *15. It is uncontroverted that prior to engaging in protected speech plaintiff was reprimanded for her failure to submit lesson plans

for the first seven weeks of school, failure to submit student compositions for the first seven weeks of school, failure to submit a time distribution sheet, and inappropriate conduct. (Def.'s LR 56.1(a)(3) ¶¶ 22, 31, 35.) As of January 21, 1999 plaintiff had been absent for eleven days, and tardy for four days. (*Id.* ¶ 27.) Furthermore, on February 24, 1999 Lewis had expressed concern for the safety of the children, the staff and himself and had inquired if Ahmad could be removed from the premises. (*Id.* ¶ 41.) Harris had also noted weaknesses in Ahmad's teaching abilities. (*Id.* ¶ 25.) Taken together, this prior criticism tends to show that defendant would have made the same adverse employment decisions regardless of whether Ahmad had filed a charge with the EEOC. Thus, defendant has shown legitimate reasons for the adverse employment actions.

Plaintiff argues that these reasons are merely a pretext for defendant's discriminatory motives. To create a factual issue as to whether defendant's reasons are pretextual Ahmad must offer a "detailed refutation of events which underlie the employer's negative performance assessment." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994). However, Ahmad's only argument for pretext is that males with worse attendance and tardiness were not suspended or reprimanded. (Pl.'s Aff. ¶¶ 15, 16.) This does not refute defendant's criticism of Ahmad in her failure to turn in lesson plans and student compositions, her deficiencies in teaching abilities, and behavior toward students and faculty. (Def's LR 56.1(a)(3) ¶¶ 20, 21, 25, 35, 40, 44.) Therefore, plaintiff has not shown sufficient evidence that defendant's legitimate reason for the adverse employment action is pretextual.

Thus plaintiff has not shown a prima facie case of retaliation and defendant's motion for summary judgment as to plaintiff's retaliation claim is granted.

## C. Sexual Discrimination

Ahmad attempts to show that she was discriminated against on the basis of sex through defendant's differential treatment. To survive summary judgment on her sexual discrimination claim, plaintiff must establish (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside her class more favorably. *Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 876 (7th Cir. 1999). If Ahmad satisfies this test with evidentiary-quality materials, the burden shifts to defendant to demonstrate a legitimate business reason for the action. *See Russell v. Board of Trustees of Univ. of Ill. at Chicago*, No. 00-2095, 2001 WL 225051, at *3 (7th Cir. Mar. 8, 2001). If the defendant can show a legitimate business reason, plaintiff must offer evidence that defendant's business reason is pretextual. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993).

Plaintiff has not shown that she performed her job satisfactorily nor has she shown that similarly situated employees were treated more favorably. It is undisputed that plaintiff did not turn in lesson plans or student compositions for the first seven weeks of the school year. (Def.'s LR 56.1(a)(3) ¶¶ 20, 21.) On December 15, 1998 Harris had also noted weaknesses in Ahmad's teaching abilities. (*Id.* ¶ 25.) In addition, as of January 21, 1999 plaintiff had been absent for eleven days and tardy for four days. (Def.'s LR 56.1(a)(3) ¶ 27.) The only evidence plaintiff offers to show she was performing her job satisfactorily was that she never received notices of the pre-disciplinary

meetings or the April 5, 1999 suspension. (Pl's Aff. ¶ 48.) However, this fails to refute Ahmad's absenteeism and tardiness, failure to turn in lesson plans and student compositions and weaknesses in teaching abilities. Thus, plaintiff fails to show the second element of sexual harassment.

Moreover, plaintiff has not shown that defendant treated similarly situated male employees more favorably. Plaintiff refers to male employees who were tardy and had not been suspended. (Pl's Aff. ¶ 15.) However, plaintiff has not provided any evidence that these employees were similarly situated in that they had also behaved inappropriately, showed weaknesses in their teaching ability, were absent for eleven days, and did not turn in lesson plans or student compositions. Thus, plaintiff fails to show that the male employees to whom she refers are similarly situated.

Even if Ahmad had satisfied this test, as stated above in the Court's analysis of plaintiff's retaliation claim, defendant has demonstrated a legitimate business reason for the action and plaintiff has not shown the business reason is pretextual. Thus, defendant's motion for summary judgment on plaintiff's sexual discrimination claim is granted.

## D. Intentional Infliction of Emotional Distress

This Court's jurisdiction over the Title VII claims in Counts I and II is based on 28 U.S.C. § 1331, which grants federal district courts original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." The Court's jurisdiction over the state law claim of intentional infliction of emotional distress in Count III is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), which grants district courts jurisdiction over all claims that are sufficiently related to the claim on which the original jurisdiction is based. Because plaintiff's Title VII claims are dismissed, the Court, in its discretion, declines to exercise supplemental jurisdiction

as to Ahmad's state law claim of intentional infliction of emotional distress claim. Therefore, the Court denies defendant's motion for judgment on the pleadings as to Count III and dismisses that count without prejudice.

## **CONCLUSION**

For the foregoing reasons, the Court: (1) grants in part and denies in part plaintiff and defendant's Motion's to Strike [docket nos. 33-1, 33-2, 33-3, 39-1, 39-2]; (2) grants defendant's motion for summary judgment as to Ahmad's Title VII claims of sexual harassment and discrimination (Count I) and retaliation (Count II) [docket no. 30-1], and (3) denies defendant's motion for judgment on the pleadings as to Ahmad's Intentional Infliction of Emotional Distress Claim (Count III) [docket no. 29-1]. Pursuant to 28 U.S.C. § 1367(c)(3), the Court, having dismissed all claims over which it has original jurisdiction, in its discretion declines to exercise supplemental jurisdiction as to Ahmad's state law claims, and dismisses Count III without prejudice. The Court hereby terminates this case. This is a final and appealable order.

**SO ORDERED**                    ENTERED: 3/29/07

_Ronald A. Guzman_
**HON. RONALD A. GUZMAN**
**United States Judge**